# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**MELISSA SARVEY,** )
    **Plaintiff** )
                                                )
                                                )     **C.A.No. 16-157ERIE**
**vs.** )
                                                )
**JOHN WETZEL, et al,** )    **Magistrate Judge Baxter**
    **Defendants.** )

## MEMORANDUM OPINION[1]

United States Magistrate Judge Susan Paradise Baxter

**Relevant Procedural History**

       Plaintiff, a state inmate incarcerated at SCI Cambridge Springs, initiated this civil rights action through counsel on June 21, 2016. As Defendants to this action, Plaintiff named: John Wetzel, Secretary of the Pennsylvania Department of Corrections; Joanne Torma, Superintendent of SCI Cambridge Springs; Joyce Wilkes, the former Superintendent of SCI Cambridge Springs; and Corrections Officers Keith Mayo and Brian Shank of SCI Cambridge Springs. This action arises out of a sexual assault that Plaintiff suffered at the hands of Correctional Officer Mayo during her incarceration at SCI-Cambridge Springs and the physical and emotional trauma that she endured as a result of the failure of administration at the Department of Corrections and the SCI-Cambridge Springs to protect her from the assault and during its aftermath. At Count I,

---

[1] The parties have consented to having a United States Magistrate Judge exercise jurisdiction over this matter. ECF No. 13; ECF No. 25.

Plaintiff advances an Eighth Amendment claim against all five Defendants. Counts II and III are state law claims for battery and intentional infliction of emotional distress against Defendant Mayo. ECF No. 1.

Defendants Shank, Torma, Wetzel and Wilkes have filed a motion for partial summary judgment [ECF No. 26] based solely upon Plaintiff's failure to exhaust her administrative remedies. Plaintiff has filed a brief in opposition [ECF No. 56] and Defendants have filed a reply brief [ECF No. 58]. This motion is fully briefed and is ripe for disposition by this Court.[2]

**The Allegations of the Complaint[3]**

On September 19, 2014, Plaintiff was sexually assaulted by Defendant Mayo, a corrections officer at SCI Cambridge Springs. ECF No. 1, ¶¶ 28-44. Shortly after the assault, Plaintiff reported it to Officer Hamilton and in turn the assault was reported to the Office of Special Investigation and Intelligence ("OSII"). Id. at ¶¶ 47-48. As of the date of the filing of this civil action, Plaintiff had not been provided with any information regarding the result of the investigation by the OSII. Id. at ¶¶ 49-50. Defendant Mayo continues to work at SCI Cambridge Springs and has direct contact with female inmates including Plaintiff. Id. at ¶¶ 54-60.

Plaintiff alleges that on several occasions prior to the September 19th assault, Defendant

---

[2] Additionally, Defendants Shank, Torma, Wetzel, and Wilkes filed a motion for partial summary judgment on the merits of Plaintiff's claims against them. ECF No. 59. Plaintiff has filed a brief in opposition [ECF No. 66] and Defendants have filed a reply brief [ECF No. 70]. This motion will be addressed separately by this Court in due course.

[3] Because the Concise Statements do not address the factual underpinnings of the legal claims, this Court herein restates the allegations of Plaintiff's complaint in order to provide context.

Mayo engaged in inappropriate sexual touching of Plaintiff's breasts and buttocks. Id. at ¶ 21. Defendant Mayo also inappropriately touched other inmates. Id. at ¶ 22. Defendant Shank witnessed Defendant Mayo's actions against Plaintiff and other inmates and failed to take any actions to report or prevent such abuse. Id. at ¶ 25. At least one other Department of Corrections employee witnessed and reported Defendant Mayo's inappropriate conduct to SCI Cambridge Springs officials. Id. at ¶ 26. Despite this report of sexual abuse, Defendant Wilkes, the Superintendent at the time, took no action to terminate or reprimand Defendant Mayo or prevent further contact between him and female inmates. Id. at ¶ 27. Plaintiff alleges that Wetzel, Torma, Wilkes, and Shank "were aware from previous complaints and previous observations that Defendant Mayo had committed acts of sexual abuse and harassment against Ms. Sarvey and other inmates." Id. at ¶ 104.

**Standard of Review**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v.

Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989) (the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

As to a motion for summary judgment on the Prison Litigation Reform Act's failure to exhaust defense, a sister court within the Middle District has concisely summarized the shifting burdens of proof:

> Failure to exhaust available administrative remedies is an affirmative defense that must be pleaded and proven by the defendant. But once the defendant has carried that burden, the prisoner has the burden of production. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. However, as required by the Supreme Court, the ultimate burden of proof remains with the defendant.

Njos v. Argueta, 2017 WL 1304301, at *2 (M.D. Pa. Feb.23, 2017) (internal citation omitted).[4]

---

[4] The "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 217 (2007). Instead, the failure to exhaust must be asserted and proven by the defendants. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

**The Exhaustion Requirement of the Prison Litigation Reform Act**

Defendants Shank, Torma, Wetzel and Wilkes argue that they are entitled to summary judgment based on Plaintiff's failure to exhaust her administrative remedies on the claims against them.

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id. The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992).

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006). So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' … [I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007).

In this case, it is on this point that this Court's analysis must focus. In a remarkably similar case, Magistrate Judge Carlson indicated: "This legal dispute is further complicated by the fact that Pennsylvania Department of Corrections policies seem to prescribe several paths for inmate grievances, describing one grievance procedure in DC-ADM 804, the Department of

5

Corrections' general grievance procedure, while prescribing another process in a separate policy, DC0ADM 008, for allegations regarding sexual assault. Thus, we are presented with an administrative and regulatory grievance structure that appears to potentially provide for parallel sexual assault grievance procedures." Frye v. Wilt, 2017 WL 6405623, at *1 (M.D.Pa. Dec. 15, 2017). Here, the inquiry is whether legal claims that are corollary to the sexual assault should be exhausted through DC-ADM 804, the general grievance procedure, or through DC-ADM 008, the more specific procedure implementing the PREA[5]? Based on the policies themselves and the evidence provided, the answer to this question is unclear to this Court.

The DC-ADM 804 grievance system, the general grievance procedure, consists of three separate stages. First, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator within fifteen days of the incident, who responds in writing within ten business days. Second, the inmate must timely submit a written appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days. Finally, the inmate must submit a timely appeal to the Central Office Review Committee, also known as the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"), within fifteen working days, and the inmate will receive a final determination in writing within thirty days. ECF No. 56-1, pages 4-53. DC-ADM 804 explicitly provides that a grievance regarding sexual abuse will not be addressed through the Inmate Grievance System and must be addressed through Department policy DC-ADM 008. ECF No. 29-1, page 9, 13.

---

[5] Prison Rape Elimination Act ("PREA") 42 U.S.C. § 15601, et seq.

6

Meanwhile, DC-ADM 008, the more specific PREA Procedures Manual/Policy, provides:

> An inmate who is the victim of sexual abuse or sexual harassment by … [an] employee … should report the abuse to a staff member as soon as possible. A report may be made to any staff member in the facility.

ECF No. 56-1, page 113. The DC-ADM 008 applies to "an allegation of sexual abuse … and ***staff neglect or violation of responsibilities that may have contributed to such incidents…"*** Id. (emphasis added). There are no technical reporting requirements under DC-ADM 008: no time limitations, no specific content limitations, and no specific identification requirements. There are also no appeal procedures associated with DC-ADM 008. Furthermore, DC-ADM 008 provides:

> Inmates shall not utilize the Grievance procedure to report sexual abuse. If an inmate files a grievance related to sexual abuse, the Grievance Officer shall immediately forward this grievance to the Security office for investigation. The inmate will be notified of this action. This will be considered an exhaustion of administrative remedies.

ECF No. 56-1, page 114.

In opposition to Defendants' summary judgment, Plaintiff has presented the deposition testimony from Defendants' Rule 30(b)(6) designee indicating that DC-ADM 008 is the appropriate avenue of reporting not only the specific act of a sexual assault, but also violations related to the assault or to PREA more generally. ECF No. 56-1, Deposition of Amy Boylan. Amy Boylan, the Superintendent's Assistant at SCI-Cambridge Springs, is the grievance coordinator at the institution. Id. at page 168. In that capacity, Boylan collects grievances, reviews them, enters them into the grievance database with a number, and assigns them to a grievance officer accordingly. Id. at page 170. Boylan testified that if a general grievance filed under DC-ADM 804 "sort of touches on the boundaries of a PREA investigation," the general

grievance will be rejected. ECF No. 56-1, Boylan Deposition, at page 55. In further support of her opposition, Plaintiff has produced several examples of rejection of an 804 grievance because it touched on the boundaries of PREA. See ECF No. 56-1, page 219 (Grievance 614367 complaining that a guard opened the door while the complainant was using the toilet and grieving that she "felt harassed sexually and I feel like everyone is trying to sweep this under the rug."); Id. at page 223 (Grievance 629154 complaining that grievant was fired from her dietary job after making a previous PREA claim); Id. at page 239 (Grievance 546216 complaining about the lack of follow-up medical treatment following a PREA-related matter at another prison). See also id. at pages 226-237. Additionally, when presented with a question about an inmate who wanted to grieve a sexual assault against a guard as well superior officers who failed to protect her from sexual assault, Boylan admitted that she was unclear of the proper way to grieve the issues. Id. at pages 186-189.

Although the exhaustion of administrative remedies is mandatory under the PLRA, the Supreme Court has recognized a narrow exception to the exhaustion requirement "built into the statutory language of the PLRA; a prisoner need not exhaust administrative remedies prior to filing a claim if the remedies are not available to the inmate." Ross v. Blake, ___ U.S. ___, 136 S.Ct.1850, 1853 (2016). The Ross Court recognized three kinds of circumstances in which an administrative remedy is not available:

> First, … an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates. … Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. … And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

Ross, 136 S.Ct. at 1859-60.

With regard to the second circumstance, the Supreme Court explained that an administrative scheme is opaque when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it … When rules are so confusing that no reasonable prisoner can use them, then they're no longer available." Id. at 1859. Moreover, Ross indicated that "when a remedy is … essentially 'unknowable' – so that no ordinary prisoner can make sense of what it demands – then it is also unavailable." Id.

Here, the DC-ADM 804 and DC-ADM 008, together with the evidence before this Court, demonstrate that as to corollary claims "regard[ing]" sexual abuse, the administrative remedy scheme is unavailable due to its opaqueness/opacity. See Frey v. Wilt, 2017 WL 6405623, at *6 (M.D. Pa. Dec.15, 2017) ("[W]e nonetheless find the wording of DC-ADM 008 to be so opaque – particularly as to which types of claims 'regard' sexual abuse and therefore do not need to be grieved under DC-ADM 804 – that the administrative remedy scheme with regard to these types of claims is, 'practically speaking, incapable of use."); Ricciardi v. Shumencky, 2018 WL 1251834, at *5 (M.D. Pa. Mar.12, 2018); Bucano v. Austin, 2017 WL 4563948 (W.D.Pa. Oct.13, 2017). The two policies taken together, along with Boylan's description of her implementation of the policies, demonstrates that "no ordinary prisoner could make sense of what" is demanded for purposes of proper exhaustion of these claims. Accordingly, the administrative remedies were unavailable to Plaintiff. The motion for summary judgment will be denied.

An appropriate order follows.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: March 28, 2018

9